United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

RAYMOND FRANK CHRISTIE,
Plaintiff,

v.

COUNTY OF HUMBOLDT, et al.,
Defendants.

Case No. 25-cv-10328-NW

**ORDER GRANTING MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

Re: ECF No. 25

Plaintiff Raymond Frank Christie, a cattle rancher, brings suit against Defendants County of Humboldt (the "County"), Humboldt County Livestock Deputy Sheriff Travis Mendes, Humboldt County Deputy District Attorney Adrian Kamada, and Humboldt County Sheriff William Honsal, alleging that Defendants, without probable cause, wrongfully investigated and prosecuted him for animal abuse.

Before the Court is Defendants' motion to dismiss Plaintiff's first amended complaint. ECF No. 25. The motion is fully briefed, and the Court heard argument on September 25, 2026. ECF Nos. 30, 31. For the foregoing reasons, the Court GRANTS the motion.

## I. BACKGROUND[1]

Christie is a cattle rancher in Humboldt County. He owns thousands of acres, mostly around the low-lying, flood-prone Arcata Bottoms area. His business model is to buy sick or injured cattle inexpensively at auction, then rehabilitate and resell the cattle for a profit. Because he routinely takes in sick or injured animals, he has received complaints about the condition of animals on his property in the past.

[1] The facts are taken from Plaintiff's First Amended Complaint ("FAC"). ECF No. 24 ¶¶ 51–199.

Over the last few years, Christie has had several interactions with the County regarding animal welfare concerns. In 2008, Christie "was investigated by the Sheriff's Office for running a supposed cockfighting operation on his properties." FAC, ECF No. 24 ¶ 84. After a jury trial on the matter, a "jury acquitted [Christie]. The court declared a mistrial." *Id.* ¶ 86. In 2015, an "[u]nauthorized and [i]ntrusive [d]rone" took video footage of Christie's property, showing "a pile of cattle carcasses." *Id.* ¶¶ 87–88. Though the video sparked public outrage, the Sheriff's Office did not investigate Christie in connection with the video.

**A. The 2018 Investigation and Raid**

Christie claims that prior to 2018 no livestock deputy had accused him of animal abuse. But in November 2017, Defendant Sheriff Honsal appointed Defendant Mendes as Livestock Deputy, and with improper motives Mendes immediately targeted Christie. Christie asserts that Mendes "wanted to be a cattle rancher," and was "resent[ful] of [Christie's] ongoing success despite his acquittal" in the cockfighting case. *Id.* ¶ 92, 95. As evidence of this targeting, Christie points out that Mendes investigated Christie's properties about 20 times in roughly four months, a stark increase in frequency – prior livestock deputies investigated about 1.5 times a year.

Christie alleges that on March 19, 2018, more than thirty armed personnel from nine agencies raided his home while members of the press gathered. Plaintiff and his girlfriend were held on the porch in their nightclothes while officers searched the house. Mendes then handcuffed Christie. Despite his request to speak to an attorney, both Defendant Mendes, and Defendant Deputy District Attorney Kamada—who also participated in the raid—interrogated Christie about the condition of sick animals, which had arrived on his property only hours earlier.

Plaintiff alleges that while Mendes secured warrants to conduct a raid of his properties, there was no probable cause supporting those warrants. He claims Mendes intentionally or recklessly misstated and omitted information from affidavits supporting the warrants, which if corrected, would have "cast doubt on a finding of probable cause." *Id.* ¶ 101.

Christie further alleges that evidence collected at the 2018 raid was mishandled, then later used against him. He contends that Mendes secretly recorded the audio of Christie's interrogation during the raid but did not mention the recording in his investigative report. Plaintiff states that

the District Attorney's Office altered Mendes's recording by "re-record[ing]" it because the quality was "poor," and Christie was never provided with the original audio recording. *Id.* ¶ 134. Christie contends that during the raid, Mendes staged photos, lied about the number of devices used to take photos, and manipulated data associated with photos taken during the raid. The staged photos were then used against Plaintiff at trial. Finally, Christie asserts that Defendant Kamada lost a video taken during the raid; but still images from the video were extracted and used as evidence at trial.

**B. Plaintiff's Animal Abuse Trial**

In connection with the 2018 raid, Christie was charged with four felony counts of animal cruelty and misdemeanor charges for littering animal carcasses near state waterways. Plaintiff alleges the charges of littering animal carcasses near waterways were an easy pretext for targeting him. Christie maintains that he kept the carcasses "on the highest spot of land" on his ranch "in an effort to comply with Humboldt County's disposal guidelines," which "mandated that carcasses should be buried at least five feet above the seasonally highest level of groundwater." *Id.* ¶ 88. But Plaintiff's land is low-lying, and "[i]f [Christie] had carcasses on his land, which Deputy Mendes and Deputy DA Kamada knew he did, then [Christie] would be liable for misdemeanor littering violations of California Fish and Game Code section 5652(a), which prohibits littering in state waterways." *Id.* ¶ 94.

Plaintiff's 2019 trial drew significant media attention in Humboldt County and spurred more community backlash against him. Ultimately, while the jury convicted Plaintiff of some misdemeanor littering counts, the jury did not reach a verdict on the felony counts and the court declared a mistrial. Defendant Kamada stated his intention to retry Christie on the felony counts, but the Covid-19 pandemic delayed Christie's retrial.

As further evidence of his being targeted, Christie alleges that in 2021, agents from the Sheriff's Office improperly "tagged along" with a search conducted by the U.S. Department of Agriculture ("USDA"). *Id.* ¶ 171. The agents searched Christie's properties, including his home, which Christie alleges swept beyond the scope of the USDA's warrant. The state court excluded evidence from the 2021 raid from the retrial of Christie's felony animal cruelty charges.

On December 1, 2023, the District Attorney dismissed the four felony animal cruelty charges against Christie. Christie alleges he "paid a $12,000 donation to a local organization dedicated to the protection of animals in lieu of a fine" for the "misdemeanor convictions for littering" of animal carcasses. *Id.* ¶ 187. He alleges that "[a] year later, the court set [Christie's] guilty verdict for the misdemeanor littering convictions aside and dismissed the action, thereby clearing [Christie's] record related to the unlawful, yearslong campaign against him." *Id.* ¶ 188.

## II. PROCEDURAL POSTURE

On December 1, 2025, Christie initiated this case against Defendants. ECF No. 1. Christie alleges Defendants investigated, arrested, and prosecuted him for felony animal cruelty between 2018 and 2023, despite knowing, or being deliberately indifferent to, the fact that Christie had not committed the charged offenses. As evidence of this knowledge, Christie states that Defendants knew Christie purchased unhealthy animals at the Humboldt Auction Yard, and he did so with the intent to rehabilitate them. Defendants also knew Christie did not have sufficient means to dispose of cow carcasses.

Plaintiff initially brought four claims against all Defendants under 42 U.S.C. § 1983 for: (1) unreasonable seizure of a person, (2) unreasonable search and seizure of property, (3) malicious prosecution, and (4) deliberate fabrication of evidence. ECF No. 1. He also alleged *Monell* liability against the County under § 1983. *Id.*

Defendants moved to dismiss Christie's original complaint on March 9, 2026. ECF No. 20. Before that motion was fully briefed, Christie amended his complaint to add claims against all Defendants for retaliation and conspiracy. FAC, ECF No. 24.

On March 27, 2026, Defendants moved to dismiss Plaintiff's FAC. ECF No. 25. Plaintiff opposed, and Defendants filed a reply. ECF Nos. 30, 31. The Court held a hearing on the motion on September 25, 2026.

## III. LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(b)(6)

A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a), and plead "enough facts to state a claim to relief

that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the complaint. For purposes of ruling on the motion, the Court generally "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). But the Court need not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)).

A complaint's allegations must give the defendant "fair notice" and "enable the . . . party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). A pleading "which is so vague or ambiguous" that an opponent "cannot reasonably prepare a response" is insufficient. *See* Fed. R. Civ. P. 12(e). If dismissal is warranted the court should grant leave to amend "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) overruled in part on other grounds by *Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014) (en banc) (quotation omitted).

## IV. DISCUSSION

Plaintiff brings six claims in the FAC against all Defendants: (1) violation of § 1983 for unreasonable seizure of a person; (2) violation of § 1983 for unreasonable search and seizure of property; (3) violation of § 1983 for malicious prosecution; (4) violation of § 1983 for deliberate fabrication of evidence; (5) retaliation; and (6) conspiracy against all Defendants. Plaintiff brings a final claim against only the County for (7) *Monell* liability. FAC, ECF No. 24.

Defendants move to dismiss all Plaintiff's claims under Rule 12(b)(6). Defendants organize their arguments (a) by Defendant, and (b) by claim. Taken together, Defendants ask the Court to dismiss Plaintiff's entire FAC. The Court begins by addressing Defendants' arguments for dismissal based on the Defendant and then turns to Defendants' remaining arguments on a

claim-by-claim basis.

### A. Defendant-Specific Grounds for Dismissal

#### 1. Claim Seven: *Monell* Liability Against the County

Defendants ask the Court to dismiss Plaintiff's *Monell* liability claim (Claim 7) brought against the County.

"To establish municipal liability under *Monell*[*v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)], [the plaintiff] must prove that (1) he was deprived of a constitutional right; (2) the municipality had a policy; (3) the policy amounted to deliberate indifference to [his] constitutional right; and (4) the policy was the moving force behind the constitutional violation." *Lockett v. County of Los Angeles*, 977 F.3d 737, 741 (9th Cir. 2020). "*Monell* liability for an improper custom or practice cannot be predicated on isolated or sporadic incidents and instead must be so persistent and widespread that the custom or practice constitutes a permanent and well settled city policy." *Lopez v. City & Cnty. of San Francisco*, No. 25-CV-04390-LB, 2025 WL 2223431, at *3 (N.D. Cal. Aug. 5, 2025) (citing *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996)).

Here, Plaintiff has not sufficiently alleged facts supporting that that the municipality had a "well settled city policy," that the policy amounted to deliberate indifference to his constitutional rights, or even that the policy instigated the alleged violations. *Lopez*, 2025 WL 2223431, at *3. While Christie uses the conclusory phrase "policies, practices, and/or customs," Christie has not alleged specific facts that show that the County was involved in a manner that is "persistent and widespread." *Id.*; *see* FAC, ECF No. 24 ¶ 250. Instead, Plaintiff makes much of individual Defendants' actions and contributions to the alleged wrongful conduct.

Establishing *Monell* liability is a high bar. If Christie elects to proceed with this theory, he must plead substantially more facts regarding the County's policies and how the County's policy led to the alleged violations. Finally, Plaintiff cannot base his theory of *Monell* liability on the actions of the individual Defendants. "[A] municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691. To the extent that Christie argues that the County failed to supervise or monitor the individual Defendants, or is otherwise liable under a *respondeat superior* theory, those claims cannot proceed.

Additionally, while Christie named the County as a Defendant in each of his other claims (Claims 1–6), this is improper. "[T]he sole method for imposing liability on a municipality under 42 USC § 1983 is under *Monell*." *Ter-Galstanyan v. Cnty. of Kern*, No. 1:22-CV-00645-JLT-CDB, 2024 WL 1971819, at *9 (E.D. Cal. May 3, 2024). To the extent Plaintiff brings his claims 1 through 6 against the County, those claims are likewise dismissed against the County.

The Court GRANTS Defendants' motion to dismiss Plaintiff's claims against the County (Claims 1–7).

**2. Claims 1–6: Claims Against Defendant Honsal**

Defendant Honsal has been the Humboldt County Sheriff since 2017. Plaintiff alleges that Sheriff Honsal supervised Defendant Deputy Sheriff Mendes during the relevant period, including during the years that Christie claims Defendant Mendes wrongfully targeted him.

Defendants ask this Court to dismiss all claims brought against Defendant Honsal for failure to state a claim. The Court agrees. Christie does not allege sufficient facts to support his claims against Defendant Honsal. Christie's allegations regarding Defendant Honsal relate primarily to descriptions of his title and role. Christie also alleges generally that Defendant Honsal's office "did not seriously pursue" reports of "neglected, sick, skinny, lame, and weak cattle being sold at the auction" in Humboldt County. FAC, ECF No. 24 ¶ 66. But Christie makes no specific allegations suggesting Defendant Honsal, while acting under color of law, took action that deprived Christie of any constitutional rights, which would give rise to claims under § 1983. *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) (to bring a § 1983 claim, a plaintiff must allege that a person deprived him of a constitutional right while acting under color of law). Christie has not alleged facts that show that Defendant Honsal took or failed to take actions that deprived Christie of a constitutional right. The alleged facts do not show the connection between Defendant Honsal and the individual officers. *Id*. ("A person deprives another of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which [the plaintiff complains].") (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)). And, "[g]overnment officials may not be held liable for the unconstitutional

United States District Court
Northern District of California

conduct of their subordinates under a theory of *respondeat superior*." *Iqbal*, 556 U.S. at 676 (2009).

The Court GRANTS Defendants' motion to dismiss Plaintiff's claims against Defendant Honsal (Claims 1–6).

**3. Claims 3–6: Claims Against Defendant Kamada**

Defendant Kamada was a Deputy District Attorney in Humboldt County in 2018. Christie alleges Defendant Kamada targeted him because the community resented Christie after he was acquitted in a prior cockfighting trial.

Defendants move to dismiss Claims 3–6 against Defendant Kamada, contending that he is absolutely immune from suit under § 1983 for his activities "intimately associated with the judicial phase of the criminal process." ECF No. 25 at 15–16 (citing *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)). The Court agrees. "Functions for which absolute prosecutorial immunity have been granted include the lawyerly functions of organizing and analyzing evidence and law, and then presenting evidence and analysis to the courts and grand juries on behalf of the government; they also include internal decisions and processes that determine how those functions will be carried out." *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 913 (9th Cir. 2012) (citation omitted). Prosecutors "are absolutely immune from liability for the consequences of their advocacy, however inept or malicious, because it is filtered through a neutral and detached judicial body." *Id.*; *Patterson v. Van Arsdel*, 883 F.3d 826, 829–30 (9th Cir. 2018) (noting absolute immunity extends to all prosecutorial functions, "even if the acts in question were committed in bad faith").

Christie argues that Defendant Kamada's actions that form the basis of Christie's claims are outside the bounds of absolute prosecutorial immunity. ECF No. 30 at 17–18. Christie's own allegations belie this argument. Christie's claims 3 through 6 all stem from allegations that Defendant Kamada mishandled the prosecution against Christie by failing to produce certain evidence and moving forward with the government's case against Christie despite Kamada knowing he lacked probable cause to do so. These actions are squarely within the judicial phase of the criminal process. The Court's focus for questions of prosecutorial immunity is "on

the conduct for which immunity is claimed, not on the harm that the conduct may have caused or the question whether it was lawful." *Torres v. Goddard*, 793 F.3d 1046, 1051 (9th Cir. 2015) (internal quotation marks and citation omitted). "A prosecutor is absolutely immune from liability for failure to investigate the accusations against a defendant before filing charges," and for his "decision not to preserve or turn over exculpatory material before trial, during trial, or after conviction." *Broam v. Bogan*, 320 F.3d 1023, 1029–30 (9th Cir. 2003) (citations omitted); *Ter-Galstanyan*, 2024 WL 1971819, at *4.[2]

The Court GRANTS Defendants' motion to dismiss Plaintiff's claims against Defendant Kamada (Claims 3–6).

**B. Claim-Specific Grounds for Dismissal**

The Court next addresses Defendants' remaining arguments on a claim-by-claim basis.

**1. Claims 1–2: Unreasonable Arrest and Unreasonable Search and Seizure of Property**

In their motion, Defendants argue that Plaintiff's Fourth Amendment claims are time-barred and should be dismissed as to all Defendants. Because § 1983 does not contain a statute of limitations, "claims brought under § 1983 are subject to the forum state's statute of limitations for personal injury suits." *Thomas v. Cnty. of Humboldt, California*, 124 F.4th 1179, 1191 (9th Cir. 2024), cert. denied, 146 S. Ct. 27 (2025) (quoting *Flynt v. Shimazu*, 940 F.3d 457, 461 (9th Cir. 2019). "In California, 'the relevant period is two years.'" *Id.* (citing Cal. Civ. Proc. Code § 335.1)). "Although state law determines the length of the limitations period, federal law determines when a civil rights claim accrues." *Knox v. Davis*, 260 F.3d 1009, 1013 (9th Cir. 2001) (internal quotation marks and citation omitted). Under federal law, Fourth Amendment

---

[2] Christie also alleges Defendant Kamada "played investigator rather than staying in his lane as a prosecutor," because he participated in the 2018 raid. FAC, ECF No. 24 ¶ 95. A prosecutor is not entitled to absolute immunity, but only qualified immunity, when "performing investigatory or administrative functions, or [when] essentially functioning as a police officer or detective." *Swift v. California*, 384 F.3d 1184, 1188 (9th Cir. 2004) (citing *Broam*, 320 F.3d at 1028). Here, Defendant Kamada is not entitled to absolute immunity, but only qualified immunity, for his "investigatory" functions during the 2018 raid. But Defendants' motion does not challenge, and the Court thus does not address, the sufficiency of Plaintiff's claims that Defendant Kamada violated his Fourth Amendment rights during the raid (claims 1 and 2).

unlawful search and seizure claims accrue at the time of the allegedly wrongful search and seizure occur. *Wallace v. Kato*, 549 U.S. 384, 388 (2007); *Venegas v. Wagner*, 704 F.2d 1144, 1146 (9th Cir. 1983) ("[W]here false arrest or illegal search and seizure is alleged, the conduct and asserted injury are discrete and complete upon occurrence, and the cause of action can reasonably be deemed to have accrued when the wrongful act occurs.").

Here, Plaintiff alleges he was subjected to an illegal search and seizure in March 2018, and again in October 2021. Both incidents occurred more than two years before Plaintiff filed his initial complaint in this action on December 1, 2025. Accordingly, Defendants contend that Plaintiff's Fourth Amendment claims must be dismissed. ECF No. 25 at 11.

Plaintiff argues that his Fourth Amendment claims were tolled under (1) California Government Code § 945.3, which bars a criminal defendant from bringing civil claims against a peace officer or public entity arising from the charges while the charges against the accused are pending before a superior court; and (2) an emergency Covid-19 pandemic rule implemented by the California Judicial Council, Emergency Rule 9, which tolled some civil statutes of limitation from April 2020 to October 2020. ECF No. 30 at 13. Here, only the 2018 raid resulted in a "criminal proceeding" that could have tolled the statute of limitations for his claims arising against peace officers or public entities (i.e., Defendants Mendes, Hensal, and the County) under § 945.3.

It is Plaintiff's burden to establish that his claims are facially plausible to overcome Defendants' 12(b)(6) challenge. *See Bell Atl. Corp.*, 550 U.S. at 570. Christie's FAC lacks facts that establish that his Fourth Amendment claims are plausibly within the statute of limitations; conversely, the Court cannot say that it is "beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim[s]." *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1207 (9th Cir. 1995) (reversing dismissal of claims where the applicability of the equitable tolling doctrine depended upon factual questions not clearly resolved in the pleadings). Claims 1 and 2 do not reference any specific facts supporting those claims but instead incorporate by reference the preceding 45 pages of factual allegations along with "[t]hreadbare recitals of the elements" of each claim. *Gibson v. City of Portland*, 165 F.4th 1265, 1287 (9th Cir. 2026) (internal quotation and citation omitted). This impermissible "shotgun pleading" does not provide

the Court or Defendants sufficient notice of the factual basis for the claims. *Id.* If Plaintiff intends to proceed with claims 1 and 2, he must clearly allege which specific facts permit the Court to evaluate whether the statute of limitations has been tolled.

The Court GRANTS Defendants' motion to dismiss Plaintiff's Claims 1 and 2.

**2. Claims 3–4: Malicious Prosecution and Deliberate Fabrication of Evidence**

Defendants move to dismiss Plaintiff's Claims 3 and 4 for failure to state a claim. The Court has already dismissed Claims 3 and 4 against all Defendants except Defendant Mendes, *see infra*.

"A malicious prosecution action, in California, has three elements: (1) the prosecution 'was commenced by or at the direction of the defendant and was pursued to a legal termination' in the plaintiff's favor; (2) 'was brought without probable cause'; and (3) 'was initiated with malice.'" *Myles v. United States*, 47 F.4th 1005, 1014 (9th Cir. 2022) (quoting *Casa Herrera, Inc. v. Beydoun*, 32 Cal. 4th 336, 341 (2004)). "'Malice in this context is not limited to actual hostility or ill will toward [the] plaintiff,' but also 'exists when proceedings are instituted primarily for an improper purpose' such as when 'the person initiating [the charges] does not believe that his claim may be held valid.'" *Myles*, 47 F.4th at 1014. Plaintiff does not allege facts establishing that Defendant Mendes initiated the prosecution of Plaintiff for an improper purpose or without probable cause. Even if Defendant Mendes knew Plaintiff purchased animals in poor condition to rehabilitate them, Defendant Mendes could have established probable cause to prosecute Plaintiff for further abusing or neglecting the animals based on other facts. Indeed, Plaintiff alleges that Defendant Mendes secured a warrant, presumably from a neutral magistrate, to search Christie's property and arrest him in 2018. *See Call v. Badgley*, 254 F. Supp. 3d 1051, 1062 (N.D. Cal. 2017) ("[T]he fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner."). And it is not clear that the prosecution against Plaintiff resulted in a termination *in Plaintiff's favor*: as Christie alleges, the jury found him guilty of the littering charges and hung on the charges of animal abuse against him, then the district attorney elected not to retry the case. If Christie elects to proceed on a malicious

prosecution theory, he must allege facts establishing that Defendant Mendes had no probable cause to initiate the prosecution against Plaintiff, and facts establishing that Christie's criminal case was terminated in his favor.

Plaintiff similarly fails to state a claim for his fabrication of evidence claim. "To prevail on a § 1983 claim of deliberate fabrication, a plaintiff must prove that (1) the defendant official deliberately fabricated evidence and (2) the deliberate fabrication caused the plaintiff's deprivation of liberty." *Spencer v. Peters*, 857 F.3d 789, 798 (9th Cir. 2017). This can be shown using either circumstantial or direct evidence. *Id.* at 793. "For example, evidence that officials continued their investigation of a person despite the fact that they knew or should have known that he was innocent can raise the inference that the investigator has an unlawful motivation to frame an innocent person." *Id.* (internal quotation marks and citations omitted). Here, Plaintiff alleges that Defendants knew he purchased injured and weak cattle at auction and that Christie did not have access to a rendering plant to dispose of carcasses. He alleges Defendants intentionally omitted this information from their warrant application for the purpose of retaliating against Plaintiff for defending himself in a prior lawsuit. But "withholding exculpatory evidence . . . cannot in itself support a deliberate-fabrication-of-evidence claim"; deliberate fabrication "must mean something more than a mere omission." *O'Doan v. Sanford*, 991 F.3d 1027, 1045 (9th Cir. 2021) (internal quotation marks and citation omitted); *see also Highbaugh v. Caitham*, No. C 20-03911 WHA, 2021 WL 3141215, at *9 (N.D. Cal. July 26, 2021) (dismissing deliberate fabrication claim premised on theory that detective withheld potentially exculpatory evidence).

The Court GRANTS Defendants' motion to dismiss Plaintiff's Claims 3 and 4.

**3. Claim 5: Retaliation**

Defendants argue that Plaintiff's retaliation claim is based on the same actions as Plaintiff's claims for unlawful arrest and unlawful search and seizure – Defendants' 2018 and 2021 raids of Plaintiff's property. Defendants argue that because Christie's unlawful arrest and unlawful search and seizure claims are beyond the statute of limitations, his retaliation claim is likewise untimely. As discussed above, it is unclear whether Plaintiff will be able, in good faith, to amend his complaint to establish that his unlawful arrest and search and seizure claims are

within the statute of limitations; Plaintiff must plead more specific facts to establish that his Fourth Amendment claims and his retaliation claim are timely.

Defendants also argue that Plaintiff's pleading fails to state a claim for retaliation. "To state a First Amendment retaliation claim, a plaintiff must plausibly allege 'that (1) he was engaged in a constitutionally protected activity, (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity and (3) the protected activity was a substantial or motivating factor in the defendant's conduct.'" *Capp v. Cnty. of San Diego*, 940 F.3d 1046, 1053 (9th Cir. 2019) (quoting *O'Brien v. Welty*, 818 F.3d 920, 932 (9th Cir. 2016)). "To ultimately 'prevail on such a claim, a plaintiff must establish a "causal connection" between the government defendant's "retaliatory animus" and the plaintiff's "subsequent injury."'" *Id*. (quoting *Nieves v. Bartlett*, 581 U.S. 391, 398 (2019).

Here, Plaintiff alleges that Defendants retaliated against him for "exercising his constitutional right to access the courts and defend himself in the cockfighting matter." FAC, ECF No. 24 ¶ 233. But Plaintiff fails to establish such a "causal connection" between the "retaliatory animus" and Plaintiff's injuries. Plaintiff alleges only that his "constitutionally protected activity was a substantial or motivating factor in the Defendants' conduct as it was clear that they had animus against [Christie] for prevailing in the cockfighting prosecution." FAC, ECF No. 24 ¶ 234. Plaintiff does not allege any facts showing that Defendants knew about the prior lawsuit or that they had any animus stemming from it.

The Court GRANTS Defendants' motion to dismiss Plaintiff's Claim 5.

**4. Claim 6: Conspiracy**

Defendants argue that Plaintiff's conspiracy claim fails because Defendants are entitled to qualified immunity. The Court agrees.[3]

Government officials are protected by qualified immunity from civil suit for discretionary functions performed in their official capacities unless "it would have been clear to a reasonable

---

[3] Defendants also argue that Christie's conspiracy claim is time barred because it is based on the 2018 and 2021 raids of Christie's property, and that the FAC alleges insufficient facts to state the claim. But because the Court agrees that Defendants are entitled to qualified immunity, it does not reach Defendants' remaining arguments on the conspiracy claim.

officer that the alleged conduct 'was unlawful in the situation he confronted.'" *Ziglar v. Abbasi*, 582 U.S. 120, 152 (2017) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)). To determine whether qualified immunity applies, "a district court must decide whether a reasonable public official would know that his or her *specific conduct* violated clearly established rights." *Cunningham v. Gates*, 229 F.3d 1271, 1287 (9th Cir. 2000), as amended (Oct. 31, 2000) (emphasis original) (citing *Anderson v. Creighton*, 483 U.S. 635 (1987)). "This exacting standard 'gives government officials breathing room to make reasonable but mistaken judgments' by 'protect[ing] all but the plainly incompetent or those who knowingly violate the law.'" *City & Cnty. of San Francisco, Calif. v. Sheehan*, 575 U.S. 600, 611 (2015) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)). "When, as here, defendants assert qualified immunity in a motion to dismiss under Rule 12(b)(6), dismissal is not appropriate unless we can determine, based on the complaint itself, that qualified immunity applies." *O'Brien*, 818 F.3d at 936 (internal quotation and citation omitted).

Here, Plaintiff alleges Defendants conspired to investigate and arrest him without probable cause as retaliation for defending himself in prior litigation. In their motion to dismiss, Defendants argue that Plaintiff's conspiracy claim fails because the individual Defendants are entitled to qualified immunity under the intracorporate conspiracy doctrine. ECF No. 25 at 12–13.

"Under the intracorporate-conspiracy doctrine, 'an agreement between or among agents of the same legal entity, when the agents act in their official capacities, is not an unlawful conspiracy.'" *Kelly v. Cnty. of Orange*, No. 8:24-CV-00933-JVS-JDE, 2024 WL 4719923, at *4 (C.D. Cal. Sept. 19, 2024) (quoting *Ziglar*, 582 U.S. at 153). Whether the intracorporate conspiracy doctrine entitles individual defendants to qualified immunity for civil conspiracy claims remains unresolved in the Ninth Circuit. *See Armstrong v. Reynolds*, 22 F.4th 1058, 1085 n.8 (9th Cir. 2022); *Lobato v. Las Vegas Metro. Police Dep't*, No. 22-16440, 2023 WL 6620306, at *2 (9th Cir. Oct. 11, 2023) (affirming dismissal of § 1983 conspiracy claim on qualified immunity grounds because the applicability of the intracorporate-conspiracy doctrine is unsettled); *Long v. Weeks*, 2024 WL 1672258 ("Appellants are entitled to qualified immunity on the conspiracy claim because it is not clearly established that the intracorporate conspiracy doctrine is

inapplicable to Section 1983 claims."). Plaintiff "has not identified any case demonstrating that it was clearly established that the intracorporate-conspiracy doctrine does not apply in the context of a § 1983 conspiracy claim." *Lobato*, 2023 WL 6620306 at *2; *see Hopson v. Alexander*, 71 F.4th 692, 708 (9th Cir. 2023) (the plaintiff bears the burden of showing that the constitutional right allegedly violated was clearly established). It would not have been clear to a reasonable officer at the time of the investigation, raids, and prosecution of Plaintiff between 2018 and 2025 whether the alleged intracorporate conspiracy violated Plaintiff's clearly established rights.[4] Defendants are entitled to qualified immunity on Plaintiff's conspiracy claim.

The Court GRANTS Defendants' motion to dismiss Plaintiff's Claim 6.

## V. CONCLUSION

The Court GRANTS Defendants' motion to dismiss all of Plaintiff's claims with leave to amend in part, and without leave to amend in part.

Courts have broad discretion to grant leave to amend a complaint. *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 420 (9th Cir. 2020). Generally, Rule 15 advises that "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Indeed, "[i]t is black-letter law that a district court must give plaintiffs at least one chance to amend a deficient complaint," unless there is "a clear showing that amendment would be futile." *Barke v. Banks*, 25 F.4th 714, 721 (9th Cir. 2022) (internal quotation marks and citation omitted).

The Court finds that it is not clearly futile for Plaintiff to amend his claims brought under theories of unreasonable arrest, unreasonable search and seizure, malicious prosecution, deliberate fabrication of evidence, retaliation, and *Monell* liability. Accordingly, the Court GRANTS

[4] Christie argues that the intracorporate conspiracy doctrine does not apply to a conspiracy between agents of the Sheriff's Office (as an arm of the County) and the District Attorney's Office (as an arm of the state). ECF No. 31 at 8. But Christie cites no authority supporting that agents of the Humboldt County Sheriff's Office, and agents of the Humboldt County District Attorney's Office, both represented here by Humboldt County Counsel, should be treated as agents of different entities. And Plaintiff's *Monell* claim undermines the separate entity theory: Plaintiff alleges the County's policies gave rise to constitutional deprivations by agents of *both* the District Attorney's Office and the Sheriff's Office. FAC, ECF No. 24 ¶ 250. In any event, the lack of clarity as to whether the intracorporate conspiracy doctrine applies here only bolsters the conclusion that a reasonable officer would not have been on notice that a conspiracy between a deputy sheriff and a deputy district attorney violated Plaintiff's clearly established rights.

Plaintiff leave to amend Claims 1–5 and 7 as to the County, Defendant Honsal, and Defendant Mendes.

But the Court finds that Plaintiff cannot allege facts that would cure the deficiencies identified for his remaining claim, conspiracy. Plaintiff's Claim 6 is dismissed without leave to amend because Defendants have established qualified immunity as to that claim. Plaintiff's Claims 3–6 against Defendant Kamada are dismissed without leave to amend because Defendant Kamada is entitled to absolute prosecutorial immunity for those claims.

If Plaintiff chooses to proceed with this action, Plaintiff shall file a second amended complaint within 21 days of this Order. The second amended complaint must contain a short and plain statement of each claim and explain which specific facts support each claim. *See* Fed. R. Civ. P. 8; *see Gibson*, 165 F.4th at 1288 (discussing the "four main types of [impermissible] shotgun pleadings"). Plaintiff may not add any additional claims or parties without leave of Court.

**IT IS SO ORDERED.**

Dated: September 29, 2026

Noël Wise
United States District Judge