Joel Campbell-Blair, SBN 297387
Deputy County Counsel
Destinee Valeska, SBN 326685
Deputy County Counsel
825 Fifth Street
Eureka, CA 95501
Telephone: (707) 445-7236
Email: countycounsel@co.humboldt.ca.us
jcampbell-blair@co.humboldt.ca.us

*Attorneys for Humboldt Defendants*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

RAYMOND FRANK CHRISTIE

*Plaintiff,*

v.

COUNTY OF HUMBOLDT, a local public entity; TRAVIS MENDES, in his individual and official capacity; ADRIAN CHARLES KAMADA, in his individual and official capacity; WILLIAM HONSAL, in his individual and official capacity; and DOES 1-10, in his individual and official capacities;

*Defendants.*

Case No. 5:25-cv-10328-NW

HUMBOLDT DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

Date: February 10, 2027
Time: 9:00 a.m.
Courtroom: 3
Judicial Officer: Hon. Noël Wise

[Request for Judicial Notice and [Proposed] Order filed concurrently]

# NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on February 10, 2027, at 9:00 a.m., or as soon thereafter as the matter may be heard in Courtroom 3 of the above-entitled Court, located at 280 South 1st Street, San Jose, California 95113, Defendants, County of Humboldt, William Honsal, Travis Mendes and Adrian Kamada will move this Court to dismiss Plaintiff's Second Amended Complaint in the above-captioned matter. Defendants bring this Motion pursuant to Federal Rules of Civil Procedure 12(b)(6) on the grounds that:

I. The First and Second Causes of Action, for illegal search and seizure, are barred by the running of the statute of limitations.

II. The Fifth Cause of Action for Retaliation is time-barred to the extent it is based on the 2018 search and seizure; it is otherwise factually insufficient to state a claim.

III. The Third Cause of Action for Malicious Prosecution is factually insufficient to state a claim against any defendant.

IV. The Fourth Cause of Action for Fabrication of Evidence is factually insufficient to state a claim against any defendant

V. All Causes of Action must be dismissed against the County, as each cause is factually insufficient to state claims under *Monell*.

Dated: November 3, 2026

Respectfully Submitted,

/s/

Joel Campbell-Blair, Deputy County Counsel
Attorney for the County of Humboldt and
Individual Humboldt Defendants

## Table of Contents

Introduction ........ 1

Statement of Relevant Facts ........ 1

Legal Standard ........ 3

Argument ........ 4

I. The First and Second Causes of Action are barred by the running of the statute of limitations. ........ 4

II. The Fifth Cause of Action for Retaliation is time-barred to the extent it is based on the 2018 search and seizure; it is otherwise factually insufficient to state a claim. ........ 7

III. The Third Cause of Action for Malicious Prosecution is factually insufficient to state a claim. ........ 9

IV. The Fourth Cause of Action for Deliberate Fabrication of Evidence is factually insufficient to state a claim. ........ 15

V. All Causes of Action must be dismissed against the County, as each cause is factually insufficient to state claims under *Monell*. ........ 16

Conclusion ........ 19

## Table of Authorities

### Cases

*Brien v. Welty*, 818 F.3d 920, 932 (9th Cir. 2016) .......... 7
*Albright v. Oliver*, 510 U.S. 266 (1994) .......... 9
*Alfaro v. Johnson*, 862 F.3d 1176 (9th Cir. 2017) .......... 10
*Arista Records LLC v. Doe*, 604 F.3d 110 (2d Cir. 2010) .......... 6
*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......... 3, 4
Awabdy v. City of Adelanto, 368 F.3d 1062 (9th Cir. 2004) .......... 13
*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......... 3, 4
*Caltex Plastics, Inc. v. Lockheed Martin Corp.*, 824 F.3d 1156 (9th Cir. 2016) .......... 3, 4
*Capp v. Cnty. of San Diego*, 940 F.3d 1046, 1053 (9th Cir. 2019) .......... 7
*Citizens of Humanity, LLC v. Ramirez*, 63 Cal. App. 5th 117 (2021) .......... 14
*City of Canton v. Harris*, 489 U.S. 378 (1989) .......... 17
*Collins* v. *Harker Heights*, 503 U.S. 115 (1992) .......... 10
*Crowley v. Katleman*, 8 Cal. 4th 666 (1994) .......... 13
*Dalany v. American Pacific Holding Corp.*, 42 Cal.App.4th 822 (1996) .......... 15
*Davis v. City of Ellensburg*, 869 F.2d 1230 (9th Cir. 1989) .......... 17
*Dougherty v. City of Covina*, 654 F.3d 892 (9th Cir. 2011) .......... 17
*Engquist v. Or. Dep't of Agric.*, 553 U.S. 591 (2008) .......... 11, 12
*Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797 (2005) .......... 6
*Gates v. Trevino*, 99 F.3d 911 (9th Cir. 1996). .......... 17, 19
*Gillette v. Delmore*, 979 F.2d 1342 (9th Cir.1992) .......... 17
*Gordon v. Cty. of Orange* , 6 F.4th 961 (9th Cir. 2021) .......... 17
*Hardesty v. Sacramento Metro. Air Quality Mgmt. Dist.*, 935 F. Supp. 2d 968, 983 (E.D. Cal. 2013) .......... 12
*Hartman v. Moore*, 547 U.S. 250, 252 (2006) .......... 7
*Lockett v. Cty. of Los Angeles*, 977 F.3d 737 (9th Cir. 2020) .......... 4
*Lytle v. Carl*, 382 F.3d 978 (9th Cir. 2004) .......... 18

*McDonough v. Smith*, 588 U.S. 109 (2019) .......... 16

*Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658 (1978) ...... 16, 18

*Nguyen v. Nissan N. Am., Inc.*, 487 F. Supp. 3d 845 (N.D.Cal. 2020) .......... 6

*Nieves v. Bartlett*, 581 U.S. 391, 398 (2019) .......... 7

*Pearce v. Romeo*, No. C-02-04011 RMW, 2007 U.S. Dist. LEXIS 3100, at *7 (N.D. Cal. Jan. 3, 2007) .......... 6

*Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill*, 130 F.3d 432 (9th Cir. 1997) .......... 17

*Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729 (9th Cir. 1987) .......... 3

*Sheehan v. City & County. of San Francisco*, 743 F.3d 1211 (9th Cir. 2014) .......... 17

*Singleton v. Perry*, 45 Cal. 2d 489, 494 (1955) .......... 13

Smiddy v. Varney, 665 F.2d 261 (9th Cir. 1981) .......... 13

*Spencer v. Peters* 857 F.3d 789 (9th Cir. 2017) .......... 15

*Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011) .......... 16

*Usher v. Los Angeles*, 828 F.2d 556 (9th Cir. 1987) .......... 9

*Wallace v. Kato*, 549 U.S. 384 (2007) .......... 4

## Memorandum of Points and Authorities

### Introduction

Defendants County of Humboldt, William Honsal, Adrian Kamada, and Travis Mendes respectfully move this Court to dismiss all Causes of Action in Plaintiff's Second Amended Complaint. Plaintiff's Second Amended Complaint does not correct the defects that led to the dismissal of the First Amended Complaint. ECF no. 40. Plaintiff has not developed new facts or a legal theory that revive the causes of action which rely on the 2018 search and seizure. And despite being even longer than the FAC, the SAC still lacks a short, plain statement of any claim with specific supporting facts. The SAC's 191 paragraphs of colorful narrative remain untethered to the specific defendants or elements of particular causes of action. Specifically, Plaintiff pleads no facts establishing a plausible retaliatory motive for the criminal prosecution, a lack of probable cause for that prosecution, or that the prosecution was the implementation of a county policy or custom. Plaintiff has had three attempts to present his claims. He should not be given a fourth.

### Statement of Relevant Facts

The Second Amended Complaint is brought by Ray Christie, a cattle rancher in Humboldt County, California. ECF no. 44, ¶12[1]. According to Plaintiff, his business model is to acquire weak, sick, and malnourished animals and attempt to bring them back to health. ¶1.

Plaintiff alleges that in March of 2017, in response to numerous citizen complaints about Plaintiff's livestock operation, Defendants began compiling cases involving Plaintiff for the District Attorney. ¶¶47-49. After Defendant Travis Mendes became the Livestock Deputy for the Sheriff's Office in November of 2017,

[1] Further ¶ citations are to the SAC, ECF no. 44, unless otherwise indicated.

Plaintiff alleges that a "vindictive Sheriff's Office, including Sheriff Honsal, and a rogue prosecutor, Adrian Kamada, launched a "crusade" to single out Plaintiff. ¶51.

On March 19, 2018, Mendes led a multi-agency team, which included Kamada, to execute a search warrant at Plaintiff's ranch. ¶84. During the search, agents detained Plaintiff for approximately 30 minutes. ¶88. Mendes allegedly recorded an interrogation of Plaintiff but did not properly document the recording or turn the recording over to Plaintiff until during the trial. ¶98. A District Attorney investigator documented the evidence in a report and said the recording was so poor it had to be re-recorded, in contravention of Sheriff's Office's evidence preservation policies. ¶99.

During the 2018 search, photographs were taken and video recorded. ¶115. The first video begins at 8:10 a.m., which on "information and belief," Plaintiff believes was at least an hour after the search began. Two of the photographs Plaintiff describes as "staged." ¶119. In one photograph, Mendes allegedly moved a cattle ear tag from its original location to a spot closer to a cow skull, "…so that the resulting photograph would more strongly suggest the tag was associated with that animal." ¶119. For the other photograph, Mendes allegedly moved a wheelbarrow out of the way to take "…a more dramatic photograph…" of a carcass. ¶119. Mendes took Plaintiff's iPad, and sometime after the search the iPad was "factory reset" by "someone" in the Sheriff or District Attorney's Offices, deleting all its data. ¶121. "On information and belief, the iPad contained exculpatory evidence relevant to the felony charges." ¶121.

Plaintiff claims the photographs and video taken during the search were not preserved under a proper chain of custody. ¶122. Mendes testified at a *Brady* hearing that only three devices were used and that all the images were transferred by him to a memory stick in their native format. ¶122. Plaintiff contends that a forensic expert "…proved that up to 13 difference devices were used…" ¶123. Mendes also allegedly lied about when the photographs were taken, claiming they

were taken during the search, while the forensic evidence "proved" they had been taken prior. ¶123.

The forensic expert also believed that the metadata from most of the photographs had been modified in some unknown way, "by someone in either the Sheriff's or District Attorney's office" before being produced to Plaintiff. ¶124. Most of the original source metadata was never provided. ¶125.

On June 13, 2018, the District Attorney's Office filed a criminal complaint against Plaintiff alleging seven counts of felony animal abuse and 28 misdemeanor counts related to improperly disposing of cow carcasses. ¶137. At the preliminary hearing, the District Attorney dismissed three felony counts; the remaining four, as well as all 28 misdemeanor charges, proceeded to trial. ¶137.
Following a month-long trial, the jury hung on the felony animal abuse charges and convicted on some of the misdemeanor littering charges. ¶141.

On December 1, 2023, the District Attorney's Office dismissed the four felony charges against Plaintiff. ¶160.

## Legal Standard

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may file a motion to dismiss a complaint for "failure to state a claim upon which relief can be granted." "The purpose of [Rule 12(b)(6)] is to enable defendants to challenge the legal sufficiency" of claims asserted in a complaint. *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987). A district court properly dismisses a claim under Rule 12(b)(6) if the complaint fails to allege sufficient facts "to state a cognizable legal theory." *Caltex Plastics, Inc. v. Lockheed Martin Corp.*, 824 F.3d 1156, 1159 (9th Cir. 2016).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter ... to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not

need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.' *Twombly*, 550 U.S. at 555 (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* When evaluating a complaint under Rule 12(b)(6), the court "must accept all well-pleaded material facts as true and draw all reasonable inferences in favor of the plaintiff." *Caltex*, 824 F.3d at 1159. Legal conclusions, however, "are not entitled to the assumption of truth" and "must be supported by factual allegations." *Iqbal*, 556 U.S. at 679.

## Argument

### I. The First and Second Causes of Action are barred by the running of the statute of limitations.

The statute of limitation for an action under 42 U.S.C. §1983 "…is that which the State provides for personal-injury torts." *Wallace v. Kato*, 549 U.S. 384, 387 (2007). "Under the traditional rule of accrual . . . the tort cause of action accrues, and the statute of limitations commences to run, when the wrongful act or omission results in damages. The cause of action accrues even though the full extent of the injury is not then known or predictable. Were it otherwise, the statute would begin to run only after a plaintiff became satisfied that he had been harmed enough, placing the supposed statute of repose in the sole hands of the party seeking relief." *Id.* at 391 (citations and quotations omitted.) In California, this statute of limitations is two years. California Code of Civil Procedure §335.1; *Lockett v. Cty. of Los Angeles*, 977 F.3d 737, 740 (9th Cir. 2020).

Plaintiff alleges that on March 19, 2018, Defendants executed a search warrant at his property. ¶84. Plaintiff's First Cause of Action alleges that during the search, Plaintiff was falsely arrested. ¶193. His Second Cause of Action alleges that the search warrants themselves were invalid. ¶202.

Because both of these causes of actions accrued on the day the alleged wrongs occurred, the two-year statute of limitations had long run by the time Plaintiff filed this lawsuit on December 1, 2025, unless some form of tolling applied. For this tolling, Plaintiff points to California Government §945.3, which tolls the statute of limitations for filing a civil complaint based on the conduct of a criminal investigation during the time in which criminal charges arising from that investigation are pending in superior court.

Even if §945.3 tolled occured during the pendency of the criminal proceedings, the search and seizure are still beyond the statute of limitations. According to the SAC, the search and seizure occurred on March 19, 2018. Charges were filed on June 13, 2018. ¶137. This means 86 days passed before any tolling pursuant to Government Code §945.3 would have begun. The criminal charges were dismissed on December 1, 2023. ¶160. This action was filed exactly two years later, on December 1, 2025. Therefore, after accounting for the period of tolling under §945.3, two years and 86 days elapsed between the accrual of the cause of action and the filing of the civil complaint. The search and seizure causes of action are therefore barred by two year statute of limitations under California Code of Civil Procedure §335.1.

Plaintiff argues the limitations period was "further tolled by the California Judicial Council's Emergency Rule 9, adopted in response to the COVID-19 pandemic." Emergency Rule 9 tolled statutes of limitations from April 6, 2020 to October 1, 2020, a period of time during which the criminal charges were pending, and the statute of limitations was therefore already tolled pursuant to §945.3.[2] Plaintiff provides no rationale for why Emergency Rule 9 would impact an already tolled statute of limitations. Emergency Rule 9 was not in effect during any of the time that the 2 years and 86 days were running.

---

[2] 20-05-28-rules-effective-20-05-29.pdf

As an alternative, Plaintiff pleads, "on information and belief," that he was not provided a copy of the warrant affidavit at the time the warrant was executed, and was therefore unaware of the omissions in the affidavit until after the charges were filed. There are two problems with this.

First, pleading facts "on information and belief" might be sufficient under Rule 8 if "the facts are peculiarly within the possession and control of the defendant." *Arista Records LLC v. Doe*, 604 F.3d 110, 120 (2d Cir. 2010). Whether Plaintiff was given a copy of the warrant affidavit is as much within his direct knowledge as anyone's. Pleading "on information and belief" is therefore inappropriate. Plaintiff must plead this fact from direct knowledge to meet the plausibility standard under *Twombly*.

Second, "it is well-settled that the statute of limitations for a section 1983 claim stemming from a warrantless search begins to run on the date of the search, not on the date the plaintiff learns that the search was constitutionally deficient." *Pearce v. Romeo*, No. C-02-04011 RMW, 2007 U.S. Dist. LEXIS 3100, at *7 (N.D. Cal. Jan. 3, 2007). And even if the delayed discovery rule could apply here, the burden is on the Plaintiff to "specifically plead facts to show…the inability to have made earlier discovery despite reasonable diligence." *Nguyen v. Nissan N. Am., Inc.*, 487 F. Supp. 3d 845, 856 (N.D.Cal. 2020). Plaintiff alleges he acquired the affidavit during routine discovery for the criminal case and pleads no affirmative or diligent efforts to obtain the warrant affidavit earlier. Since Plaintiff was convinced of his innocence, he would have had "reason at least to suspect a factual basis" for his search and seizure claims at the time the warrant was executed, at which point the causes of action would have accrued. *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 807 (2005).

Plaintiff therefore has identified no theory that would rescue his search and seizure claims from the running of the statute of limitations.

### II. The Fifth Cause of Action for Retaliation is time-barred to the extent it is based on the 2018 search and seizure; it is otherwise factually insufficient to state a claim.

"To state a First Amendment retaliation claim, a plaintiff must plausibly allege 'that (1) he was engaged in a constitutionally protected activity, (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity and (3) the protected activity was a substantial or motivating factor in the defendant's conduct.'" *Capp v. Cnty. of San Diego*, 940 F.3d 1046, 1053 (9th Cir. 2019) (quoting *O'Brien v. Welty*, 818 F.3d 920, 932 (9th Cir. 2016)). "To ultimately 'prevail on such a claim, a plaintiff must establish a "causal connection" between the government defendant's "retaliatory animus" and the plaintiff's "subsequent injury."'" *Id.* (quoting *Nieves v. Bartlett*, 581 U.S. 391, 398 (2019)). For both retaliatory arrest and the retaliatory prosecution, a plaintiff must plead the absence of probable cause. *Hartman v. Moore*, 547 U.S. 250, 252 (2006); *Nieves v. Bartlett*, 587 U.S. 391, 404 (2019).

Plaintiff alleges that Defendants Honsal, Mendes and the County retaliated against Plaintiff "for exercising his constitutional right to access the courts and defend himself in the cockfighting matter." ¶230. The alleged retaliatory conduct was: (1) causing the illegal search of Plaintiff property; (2) causing the unlawful arrest of Plaintiff; and (2) causing the filing of the criminal charges against Plaintiff. The search and seizure occurred in 2018, and as discussed above, none of Plaintiffs tolling or delayed discovery arguments can save them from the statute of limitations. Therefore, the only potentially actionable act of retaliation is the filing of the criminal charges.

The facts Plaintiff pleads in support of this allegation are meagre. He alleges Deputy Kamada "framed the investigation around 'Christie's history in the courts.'" ¶231. But the SAC has dropped Kamada from the retaliation claim. Mendes allegedly "homed in on Ray's prior 'suspected fighting cock operation,'" in his investigation reports and warrant affidavit ¶231. Plaintiff has these

documents and could quote them or explain what he means by "homing", how it shows retaliatory intent, and how it is connected to the filing of charges. But he pleads no such facts, leaving us to speculate as to how the dots might connect. Likewise, he claims Mendes "resented" Plaintiff for "his continued success despite his acquittal." ¶231. But he pleads no facts linking Mendes to the cockfighting investigation that suggests he sought to punish Plaintiff for defending himself in that prior prosecution.

On the contrary, Plaintiff pleads other, more plausible sources for Defendants' motivation to prosecute Plaintiff that have nothing to do with the cockfighting case. Mendes allegedly told the District Attorney's Office that he was "fed up" with Plaintiff, because complaints about Plaintiff's animals had interrupted his weekends three weeks in a row. ¶59. And the Sheriff's Office had received numerous complaints from the public, "particularly from disgruntled neighbors frustrated by loose cattle who constantly reported Ray to the Humboldt County Sheriff's Office and the Humboldt County District Attorney." ¶48. These complaints were a "driving force" behind the investigation and were an "ongoing problem" that the District Attorney heard about "continually" from the community. ¶49. With no facts at all linking Mendes or Honsal to the prior cockfighting case, and ample facts showing that Plaintiff's treatment of his animals was a matter of significant public concern, it cannot be said that retaliatory animus was the motivating factor behind the prosecution.

A First Amendment retaliation claim also requires that the retaliatory action would deter or chill a person of ordinary firmness from continuing to engage in the protected conduct. *Mendocino Envtl. Ctr. v. Mendocino Cty., 192 F.3d 1283, 1300 (9th Cir. 1999).* No person of ordinary firmness would simply submit to a criminal prosecution for fear that there would be future, retaliatory prosecutions.

### III. The Third Cause of Action for Malicious Prosecution is factually insufficient to state a claim.

Plaintiff's malicious prosecution claim does not connect the prosecution to any actionable violation of a constitutional right. Plaintiff also fails to meet the required elements for a malicious prosecution claim under California law because: (1) no facts show that Honsal and Mendes exercised undue influence over the District Attorney's decision to file charges; (2) the charges were supported by probable cause; and (3) the criminal charges were dismissed pursuant to a settlement agreement and there therefore the case did not terminate in his favor.

#### A. The SAC does not plead facts sufficient to show any constitutional right was violated by the prosecution.

In the Ninth Circuit, "the general rule is that a claim of malicious prosecution is not cognizable under 42 U.S.C. § 1983 if process is available within the state judicial system to provide a remedy. *Usher v. Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, an exception exists when the malicious prosecution is "conducted with the intent to deprive a person of equal protection of the laws or is otherwise intended to subject a person to a denial of constitutional rights." *Id.* (quotations omitted).

Plaintiff brings his malicious prosecution claim on the basis that Honsal, Mendes and the County initiated his criminal prosecution to deprive him of due process under Fourteenth Amendment, and in the alternative, equal protection under Fourteenth Amendment and the First Amendment right to avail himself of the courts. ¶211. Each of these is easily dispensed with.

First, the Due Process Clause of the Fourteenth Amendment does not provide a substantive right to be free from prosecution without probable cause. *Albright v. Oliver*, 510 U.S. 266, 268 (1994). "[S]ubstantive due process, with its 'scarce and

open ended' 'guideposts'", cannot afford relief for malicious prosecution. *Id.* (quoting *Collins* v. *Harker Heights*, 503 U.S. 115, 125 (1992)).

Second, as discussed above, Plaintiff does not plead sufficient facts to plausibly show that the defendant's initiated the 2018 animal abuse prosecution in retaliation for Plaintiff defending himself in 2008 cockfighting prosecution. These were different actors, prosecuting different crimes, many years later, based not on retaliatory animus, but in response to numerous citizen complaints about Plaintiff's treatment of his animals. ¶¶48, 49.

Third, Plaintiff's equal protection claim is a new cause of action that (1) is time-barred; and (2) cannot be maintained on the class-of-one theory.

Pursuant to Rule 15(c), an amended pleading relates back to the date of the original pleading if "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." A claim will not relate back where the new claim has a different "factual predicate" as an original claim. *Alfaro v. Johnson*, 862 F.3d 1176, 1184 (9th Cir. 2017).

The malicious prosecution claim in the original complaint and in the FAC was based on Defendants' intent to retaliate against, harass and punish Plaintiff "for exercising his constitutional rights, including his right to access and defend himself in court in the cockfighting case." Complaint ¶198, ECF no. 1; FAC¶217, ECF no. 24. This requires proving Defendants had retaliatory motives based on Plaintiff's defense of himself in a 2008 cockfighting proceeding. An equal protection claim requires proving that Plaintiff was singled out from other similarly situated comparable farmers without a rational basis, which means proving Alexandre Farms was similarly situated and did in fact commit crimes that were ignored. These are two very different factual predicates.

The equal protection malicious prosecution is therefore, impermissibly, a new cause of action that does not relate back to the original complaint. Because the full two-year statute of limitations ran between the dismissal of charges and the filing

of this lawsuit, a new cause of action that does not relate back to the original complaint is beyond the statute of limitations. In also violates this Court's order granting leave to amend, which prohibited Plaintiff from filing any new claims without leave of Court. Dismissal Order, p. 16, ECF no. 40.

Even if not barred, an equal protection claim based on a class-of-one theory is inapplicable in a context which involves "a vast array of subjective, individualized assessments." *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 603 (2008). In such cases, treating similarly situated individuals differently is "an accepted consequence of the discretion granted." *Id.*

In *Engquist,* the Supreme Court considered whether a class-of-one equal protection theory applies in the context of an adverse employment action. In holding that it does not, the Court analogized such actions to criminal enforcement:

> "Suppose, for example, that a traffic officer is stationed on a busy highway where people often drive above the speed limit, and there is no basis upon which to distinguish them. If the officer gives only one of those people a ticket, it may be good English to say that the officer has created a class of people that did not get speeding tickets, and a "class of one" that did. But assuming that it is in the nature of the particular government activity that not all speeders can be stopped and ticketed, complaining that one has been singled out for no reason does not invoke the fear of improper government classification. Such a complaint, rather, challenges the legitimacy of the underlying action itself—the decision to ticket speeders under such circumstances. Of course, an allegation that speeding tickets are given out on the basis of race or sex would state an equal protection claim, because such discriminatory classifications implicate basic equal protection concerns. But allowing an equal protection claim on the ground that a ticket was given to one person and not others, even if for no discernible or articulable reason, would be incompatible with

> the discretion inherent in the challenged action. It is no proper challenge to what in its nature is a subjective, individualized decision that it was subjective and individualized." *Engquist*, *supra,* 553 U.S. at 603-604.

The animal abuse prosecution in this case is just like the speeding ticket in the Supreme Court's analogy. Not every case can be prosecuted, and which cases to bring involve individualized and subjective determinations that are within the discretion of prosecutors. Choosing one case to prosecutor—and another not to — does not create an improper government classification.

Even if a class-of-one theory could serve as the underlying constitutional violation for a malicious prosecution claim, Plaintiff has not identified adequate comparators, for the "level of similarity between plaintiff and the persons with whom they compare themselves [is] extremely high." *Hardesty v. Sacramento Metro. Air Quality Mgmt. Dist.*, 935 F. Supp. 2d 968, 983 (E.D. Cal. 2013) (quotations omitted.) Plaintiff does not plead facts alleging that Alexandre Farms and Miranda's Rescue are highly similar. Alexandre is a dairy farm.¶170. Whereas Plaintiff is a rancher. ¶19. It is not ascertainable from the facts alleged how similar these operations are. For example, Plaintiff alleges his business model of buying sick animals was "distinct" in Humbolt County. ¶30. How then is there a high degree of similarity between Plaintiff and Alexandre. And Miranda's Rescue is not farm at all, it is an animal rescue, primarily for dogs and cats. ¶178.

The temporal difference between Plaintiff and his comparators is important to. The Alexandre Farms and Miranda's Rescue investigations occurred in 2024 and 2026, respectively after Plaintiff's case had concluded. ¶¶173, 178. Plaintiff identifies exactly what is different about them: "Seemingly, Sheriff Honsal, the Sheriff's Office, the District Attorney's Office, and the County learned something from Ray's case – that they have to have actual evidence to prove animal cruelty, which they did not for Ray." ¶183. Thus, Plaintiff plainly states the rationale basis justifying the different treatment: the failure to achieve a conviction in Plaintiff's

case may have led to changes in how Defendants evaluated evidence going forward.

**b. The SAC fails to satisfy the elements of malicious prosecution under California law.**

In addition to lacking the constitutional violation required to bring a malicious prosecution claim in the Ninth Circuit, the SAC also does not plead facts sufficient to state a claim for malicious prosecution under California law. The Ninth Circuit has incorporated the common-law elements of the tort of malicious prosecution in California into its analysis of malicious prosecution under §1983. *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004). Under California law, malicious prosecution requires: (1) the initiation of criminal prosecution, (2) malicious motivation, and (3) lack of probable cause." (*Usher, supra*, 828 F.2d at 562 (citing *Singleton v. Perry*, 45 Cal. 2d 489, 494 (1955). The prosecution must also have terminated in plaintiff's favor. *Crowley v. Katleman*, 8 Cal. 4th 666, 686 (1994).

The SAC does not plead facts showing that Honsal, Mendes or the County initiated the prosecution. "Ordinarily, the decision to file a criminal complaint is presumed to result from an independent determination on the part of the prosecutor, and thus, precludes liability for those who participated in the investigation or filed a report that resulted in the initiation of proceedings." *Awabdy*, *supra*, 368 F.3d at 1067 (citing *Smiddy v. Varney*, 665 F.2d 261, 266-68 (9th Cir. 1981). To allege that investigators caused the prosecution, Plaintiff must plead some facts that show Mendes and Honsal exerted some undue influence that undermined the prosecution's independence. But Plaintiff pleads the exact opposite.

Plaintiff alleges that in early 2018, Mendes gave Plaintiff a sick goat. ¶4. When prosecutors became aware of this, they decided the incident undermined Mendes' credibility. ¶4. They allegedly resolved to dismiss felony counts that relied on Mendes' testimony and proceed with only the charges they could prove without

him. ¶4. Deputy Kamada then dismissed three of the felony counts at the preliminary hearing. ¶¶131, 137. Plaintiff sees this episode as proof that Honsal and the District Attorney's Office knew of Plaintiff's innocence and proceeded with the prosecution regardless. What this actually shows is that the prosecutors exercised their independent discretion in evaluating the case, dropped the three charges that relied on Mendes' credibility, and proceeded on the charges that did not, which survived the preliminary hearing. This clearly demonstrates that prosecutorial independence broke any causal chain between the investigation and the prosecution.

Once the three felony charges were dismissed in August of 2018, any tolling under Government Code §945.3 would have ended at to those charges. Thus, any cause of action for malicious prosecution based on the two months that these charges were pending is time-barred.

Plaintiff does not plead any facts sufficient to show that the remaining four felony charges lacked probable cause. Plaintiff alleges Mendes "staged" two photographs by moving a wheelbarrow out of the way of a cow carcass to get a better picture and moved a tag closer to an unrelated skull. ¶221. He also allegedly manipulated, stripped or altered metadata of photographs so they would appear to have been taken at the time of the search warrant, and that he falsely testified as to how many devices were used to collect evidence during the search. ¶221. Plaintiff does not plead any facts connecting these alleged defects to the court's probable cause determination at the preliminary hearing, or that these defects ever resulted in the suppression of this evidence. And there are no facts at all connecting any of this to Honsal.

Finally, under California law, a malicious prosecution claim requires that the entire action was terminated in the plaintiff's favor, which "…requires favorable resolution of the underlying action in its entirety, not merely a single cause of action." *Citizens of Humanity, LLC v. Ramirez*, 63 Cal. App. 5th 117, 128 (2021) (citing *Crowley, supra*, 8 Cal. 4th at 686). Plaintiff was convicted on some of the misdemeanor counts. ¶141. In addition, a dismissal resulting from a settlement

does not constitute a favorable termination because the dismissal reflects ambiguously on the merits of the action, for the purpose of a settlement is specifically to avoid a determination on the merits. *Id.* at 129 (citing *Dalany v. American Pacific Holding Corp.*, 42 Cal.App.4th 822, 827 (1996)). When the District Attorney dismissed the felony charges in 2023, it was conditioned upon Plaintiff's waiver of his right to appeal the misdemeanor conviction. (Request for Judicial Notice, exhibit A.) There was therefore no favorable termination of Plaintiff's criminal case for purposes of malicious prosecution under California law.

## IV. The Fourth Cause of Action for Deliberate Fabrication of Evidence is factually insufficient to state a claim.

"To prevail on a § 1983 claim of deliberate fabrication, a plaintiff must prove that (1) the defendant official deliberately fabricated evidence, and (2) the deliberate fabrication caused the plaintiff's deprivation of liberty. To establish the second element of causation, the plaintiff must show that (a) the act was the cause in fact of the deprivation of liberty, meaning that the injury would not have occurred in the absence of the conduct; and (b) the act was the "proximate cause" or "legal cause" of the injury, meaning that the injury is of a type that a reasonable person would see as a likely result of the conduct in question." *Spencer v. Peters* 857 F.3d 789, 798 (9th Cir. 2017) (citations omitted).

Plaintiff's deliberate fabrication of evidence claim against Mendes comes down to the two allegedly "staged" two photographs, incorrect metadata for some of the photographs, and discrepancies in how many devices were used to take photographs and video. Missing from these allegations are any facts speaking to the causation element of a fabrication of evidence claim. Plaintiff does not provide information about the criminal charges, or the other evidence presented in the case, that would support an inference that, but for these alleged fabrications, the case would not have been filed or maintained against him. He does not even allege

that these photographs were presented at the preliminary hearing or were otherwise the basis of probable cause.

Honsal is not mentioned at all in Plaintiff's deliberate fabrication of evidence cause of action. Throughout the SAC, Honsal is only accused of generally being aware of the investigation and being supportive of his staff. He was generally "on board" with the investigation. ¶47. He had received citizen complaints. ¶50. The Sheriff congratulated Mendes on a job well done after the preliminary hearing. ¶131. The SAC concludes that he knew of omissions in Mendes' warrant affidavit but pleads no facts to support that claim. ¶65.

"For a supervisor to be liable under § 1983, there must be "either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011). There are no facts supporting either Honsal's personal involvement in, or causal connection to, any deliberate fabrication of evidence.

Finally, a fabrication of evidence cause of action accrues upon a termination of the criminal case in a plaintiff's favor. *McDonough v. Smith*, 588 U.S. 109, 120 (2019). As discussed above, there was no such favorable termination for Plaintiff.

## V. All Causes of Action must be dismissed against the County, as each cause is factually insufficient to state claims under *Monell.*

A government entity may not be held liable under §1983 unless a policy, practice, or custom of the entity can be shown to be a moving force behind a violation of constitutional rights. *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 694 (1978). In order to establish liability for governmental entities under *Monell*, a plaintiff must prove "(1) that [the plaintiff] possessed a constitutional right of which [s]he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the

constitutional violation." *Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997) (internal quotation marks and citation omitted; alterations in original.)

Plaintiffs alleging a *Monell* claim under an unconstitutional policy, practice, or custom theory must show the policy was "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Gordon v. Cty. of Orange*, 6 F.4th 961, 974 (9th Cir. 2021). An informal policy may be shown through allegations of "repeated constitutional violations for which the errant municipal officials were not discharged or reprimanded." *Gillette v. Delmore*, 979 F.2d 1342, 1349 (9th Cir.1992). Furthermore, "[l]iability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out a policy." *Gates v. Trevino*, 99 F.3d 911, 918 (9th Cir. 1996).

Failure to train may amount to a policy of "deliberate indifference," if the need to train was obvious and the failure to do so made a violation of constitutional rights likely. *City of Canton v. Harris*, 489 U.S. 378, 390 (1989). Similarly, a failure to supervise that is "sufficiently inadequate" may amount to "deliberate indifference." *Davis v. City of Ellensburg*, 869 F.2d 1230, 1235 (9th Cir. 1989). Mere negligence in training or supervision, however, does not give rise to a *Monell* claim. *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011).

A plaintiff may state a claim for *Monell* liability when an individual with final policy-making authority "ratified a subordinate's unconstitutional decision or action and the basis for it." *Gordon*, 6 F.4th at 974. Ratification requires "more than acquiescence." *Sheehan v. City & County. of San Francisco*, 743 F.3d 1211, 1231 (9th Cir. 2014), rev'd on other grounds, 575 U.S. 600 (2015). Instead, a plaintiff must show that the triggering decision was the product of a "deliberate choice from among various alternatives" to ratify the conduct in question. *Gillette*, 979 F.2d at 1348. Moreover, "ratification requires both knowledge of the alleged

constitutional violation, and proof that the policymaker specifically approved of the subordinate's act." *Lytle v. Carl*, 382 F.3d 978, 987 n.2 (9th Cir. 2004).

Plaintiff's *Monell* claim is a scattershot of unsupported legal conclusions. Even when he alleges facts, the are only as an "example" of policies, customs, "and/or" practices. ¶239. And these are only descriptions of the alleged effects of actions by county employees, not an identification of the county policies these employees were supposedly implementing. *Monell*, *supra*, 436 U.S. at 694.

Plaintiff does not allege that there was any formal county policy that was the moving force behind the alleged constitutional violations. Nor does he plead any act of ratification. Plaintiff alleges that the county authorized or permitted a custom of failing to train livestock regarding various constitutional issues. ¶239(d.). But Plaintiff does not identify any county training practice or custom specifically, and the disparate and wide-ranging nature of the alleged constitutional defects means they would have to be caused by different specific policies. And even if all the alleged errors in warrant writing and evidence handling actually occurred, Plaintiff does not plead any facts giving rise to a plausible inference that these were caused by more than mere negligence in training or supervision, which is not sufficient to give rise to a *Monell* claim. *Dougherty, supra,* 654 F.3d at 900.

Plaintiff also does not connect the conduct he believes constitutes county policies to the specific constitutional violations he believes he suffered. If Plaintiff intends to connect the examples of customs to  the constitutional violations alleged in the first five causes of action, it is unclear how. For example, Plaintiff alleges the County had a policy of selectively enforcing laws and County investigation standards. ¶239(a-b). But Plaintiff disclaims any intent to state a stand-alone equal protection cause of action, like selective enforcement. ¶191 fn. 56. The Alexandre Farms and Miranda's Rescue situations were described only to show improper motive underlying the malicious prosecution claim. *Id.* But the selectivity in these alleged customs involves the Sheriff's investigations only.

There is no connection to the prosecution. What constitutional right does this supposed custom violate?

And because Plaintiff's first five causes of action are either time-barred, factually deficient, or both, there can be no liability under *Monell* for a policy leading to those alleged violations.

Furthermore, Plaintiff does not allege that his injuries were caused by county policies, but by breaches of county policies. He claims the County had a long-standing custom of not enforcing animal cruelty laws but enforced them against Plaintiff. ¶239(a). The County had animal cruelty investigation standards but did not apply them in Plaintiff's case (though Plaintiff claims the Sheriff and District Attorney developed these in response to his own prosecution, not that they existed at the time of his prosecution and were ignored.) ¶¶239(b), 183. And the County allegedly had evidence handling requirements, but Mendes failed to follow them. ¶239(e).

If Plaintiff's theory is that the County's practice was to not follow its custom, then did the County really have a custom in the first place? And if the only identified instance in which the County did not follow its custom was in Plaintiff's case, such sporadic and isolated incidents are not sufficient to establish a traditional method of carrying out a policy. *Gates, surpa,* 99 F.3d at 918.

Plaintiff therefore fails to connect any specific county policy, custom or practice to any constitutional violation, and the *Monell* claims fails.

## Conclusion

For the reasons stated above, all Six Causes of Action in the Second Amended Complaint must be dismissed as to all Defendants.

Dated: November 3, 2026 Respectfully Submitted,

/s/

Joel Campbell-Blair, Deputy County Counsel
Attorney for the County of Humboldt and
Individual Humboldt Defendants